ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Langdon Engineering & Mgt. | ) ASBCA No. 61959 |
| | ) |
| Under Contract No. N00244-15-P-0294 | ) |

APPEARANCE FOR THE APPELLANT:     Mr. Albert L. Swank, Jr.
                                                                         Owner

APPEARANCES FOR THE GOVERNMENT:     Craig D. Jensen, Esq.
                                                                            Navy Chief Trial Attorney
                                                                            Russell A. Shultis, Esq.
                                                                            Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE CLARKE
ON THE NAVY'S MOTION FOR SUMMARY JUDGMENT

This appeal involves a contract with the Navy to refurbish eight bow thrusters. Langdon failed to deliver and the Navy terminated for cause. Langdon appealed. The Navy filed a Motion for Summary Judgment. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. Because we find a disputed material fact, we deny the Navy's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION[1]

1. On May 22, 2015, Langdon agreed to refurbish eight bow thrusters in exchange for $77,295.28 pursuant to Contract No. N00244-15-P-0294 (the Contract) (R4, tab 1 at GOV0001).

2. Section 2.0 of the Contract states:

> Background:  Due to the cumulative effects of
> saltwater/ultraviolet/sandblast exposure, the Bow Thruster
> Nozzles have reached/exceeded the intended service life.
> These Bow Thruster Nozzles require complete refurbishment
> to provide an addition 10-20yrs of service-life.  The Bow
> Thruster Nozzle (BTN) is made up of a painted fiberglass
> structure with mechanically fastened drive and attachment

---

[1] We rely on Navy facts that are not disputed by Langdon or disputed with only argument, not material facts.

components; the compositions of all parts are detailed in the reference drawings and technical manual listed in section 4.0.

(R4, tab 1 at GOV0003)

3. Section 3.0 of the Contract states:

General Requirements:
3.1 Each shipset of [Bow Thruster Nozzles] will be completely disassembled with all mechanically fastened components removed and glass bead blasted clean then visually inspected for damage.
3.2 Any damaged components will be repaired or replaced. All fasteners (nuts, bolts, washers, screws, etc.) will be replaced with new.
3.3 All existing paint on the fiberglass structure will be removed. Any damaged, deteriorated or missing fiberglass will be repaired/renewed/installed ensuring all reference drwg dimensions are maintained.
3.4 All new paint and marking will be applied after repairs are complete.

(R4, tab 1 at GOV0003)

4. Section 4.0 of the Contract states:

Performance Requirements: All repair material and physical, dimensional, and functional requirements are to be IAW the following reference drawings unless specifically addressed in section 6.0:
4.1 Drawing. 5749810 Rev. R LCAC Mechanical Installation Bow Thruster
4.2 Drawing. 5749544 Rev. V LCAC Bow Thruster
4.3 Drawing. 5749793 Rev. N LCAC Bearing Bow Thruster
4.4 Drawing. 7616123 Rev. B SLEP Mod Bow Thruster
4.5 Drawing. 6800343 Rev. N LCAC Painting and Marking
4.6 Drawing. 5749811 Rev. L LCAC Bracket Support Bow

Thruster Installation.
4.7 Technical Manual S9568-AL-SLP-010 Rev. 02 Bow
Thruster Assembly.

(R4, tab 1 at GOV0004)

5. Section 5.0 of the Contract states:

> Deliverables: Four shipsets (8 each) [Bow Thruster Nozzles]
> will be picked up from Assault Craft Unit Five, fully
> refurbished IAW sections 4.0 and 6.0 and returned to Assault
> Craft Unit Five. Period of performance will not exceed 180
> days from pickup.  No work will be done at Assault Craft
> Unit Five.

(R4, tab 1 at GOV0004)

6. Langdon was initially required to deliver by November 25, 2015 (R4, tab 1 at GOV0005).  On September 7, 2016, the contracting officer revised delivery to October 3, 2016 (R4, tab 2 at GOV0023).  On August 10, 2017, the contracting officer unilaterally revised the delivery date again, this time directing Langdon to deliver refurbished bow thrusters on a staggered basis beginning October 20, 2017 and ending on March 15, 2018 (R4, tab 3 at GOV0027).

7. On December 6, 2017, the contracting officer sent Langdon a show cause letter because Langdon had failed to deliver any of the refurbished bow thrusters.  The contracting officer also said he was considering whether to terminate the Contract.  He also directed Langdon to explain why it had failed to deliver any refurbished bow thrusters.  (R4, tab 5 at GOV0031-32)

8. On September 27, 2018, the contracting officer issued a decision terminating the Contract for cause (R4, tab 9 at GOV0041-45).  The decision stated in part:

> The Government has the right to insist on strict and timely
> compliance with contract specifications.  To avoid a default
> termination for failure to comply with specifications, it is
> incumbent on the offeror to carefully review the contract's
> specifications before submitting a proposal on the contract to
> determine if they can comply with the specifications fully and
> on time.
> Langdon Engineering has failed to refurbish any of the Bow
> Thrusters.  In this instance, per mod P00002, the delivery of
> the 8 units was tiered.  Based on Langdon Engineering's

failure to deliver the first 2 bow thrusters by 26 October 2017, the Government can terminate an entire contract based on a single late installment.

. . . .

Langdon Engineering independently opted to substitute the contracts' performance standards with his own and endanger contract performance by not providing the bow thruster refurbishments by the requested tiered delivery schedule. Furthermore, excusable delay or excuse of performance for defective specifications is based on the implied warranty of Government furnished specifications. Under this doctrine, the Government warrants that contractor compliance with Government furnished design specifications will result in acceptable contract performance. Specifications are not required to be completely accurate. All that is required is that they may be "reasonably accurate" or "adequate for the task." Since the OEM built the original Bow Thrusters, the design drawings were OEM design drawings and were adequate design specifications to perform the taskings.

(R4, tab 9 at GOV0042-43)

## DECISION

*Summary Judgment*

Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citations omitted). In the course of the Board's evaluation of a motion for summary judgment, our role is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material fact is one which may make a difference in the outcome of the case. *Liberty Lobby*, 477 U.S. at 249. The opposing party must assert facts sufficient to show a dispute as to a material fact of an element of the argument for reformation or breach. *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,291-92 (citing *Mingus*, 812 F.2d at 1390-91) ("To ward off summary judgment,

4

the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact."); *see Lee's Ford Dock, Inc.*, ASBCA No. 59041, 16-1 BCA ¶ 36,298 at 177,010.

*Contentions of the Parties*

Langdon alleges that the bow thrusters provided by the Navy were not manufactured or refurbished in accordance with the original equipment manufacturers' (OEM) drawings, "not supplying government furnished Bow Thrusters that were manufactured by the OEM and not compliant with the OEM specifications as manufactured" and, "the government supplied OEM manufactured Bow Thrusters not being in compliance with the OEM manufacturing specifications" (app. opp'n br. at 15, 17).[2] Langdon states, "Refurbishment of the fiberglass composite structure would have been possible if they had complied with the OEM specifications . . ." (app. opp'n br. at 17). Finally,

> Langdon was not surprised by their [bow thrusters] visual condition but was by the following visual out of SOW scope:
>
> Damaged caused by the Navy in packing and crating and other actions.
>
> Missing mechanical attached components
>
> Extensive prior fiberglass repairs not identified and out of OEM and this contracts specifications.
>
> Out of Bow Thruster OEM design, drawings, documents and specifications (not visual).

(App. opp'n br. at 20)

The Navy relies on the language of the contract and final decision to support its defense of the termination. It recognizes that it has the burden of proof but contends that Langdon's failure to deliver proves a prima facie case that the default was justified. The Navy states:

> First, the Contract specifications came from the original manufacturer and were identified specifically in the Contract. R4 Tab 1, GOV0004; R4 Tab 9, GOV0042-43. Although Langdon seems to believe that the standards expressed in

---

[2] Citations are to the November 10, 2020 version of Langdon's brief.

those specifications are not sufficient, there is no indication
that Langdon expressed any reservations about them before
award.

(Gov't mot. at 7)  The Navy sums up, "[t]herefore, the Contract clearly stated that the
bow thrusters were badly in need of repair.  Langdon should not have been surprised by
their condition."  (Gov't mot. at 8)

*Langdon's Irrelevant Arguments*

We include this section in an attempt to get this case back on track which is in the
interest of judicial economy.  Although we deny the Navy's motion, we find that the
majority of Langdon's arguments are irrelevant.  Langdon contends that if it had
performed as the Navy insisted it would have violated unnamed, "Naval Laws, Civil
Laws, and Federal Laws covering the injury, death and life safety of both Naval, other
military services, and civilians both directly and indirectly" and "Naval Laws and Federal
Laws covering the intentional violation and covering of historical federal contractual
violations, as well as federal monetary waste and fraud and the preservation of legal
physical exhibits, the Bow Thrusters (government owned materials)," and "Alaska State
Law violations if either Albert Langdon Swank and or LANGDON proceeded as
requested by the contract officer" (app. opp'n br. at 3-4).  Langdon filed an "IG
complaint" that was "elevated" within the Navy and the termination was not authorized
by the "IG staff" (app. opp'n br. at 4-5).  Langdon asserts it must be allowed to conduct
"discovery from the IG offices and multiple Naval commands be obtained by Langdon
from the Naval Litigation Office" and:

> This discovery involving all investigations, Naval staff and
> parties involved and the decisions, actions, instructions and
> command actions directing parties that include the contract
> officers' others and the subject Termination for Cause of this
> appeal, and only with such can all evidence and facts of this
> appeal be obtained and presented as it relates to contract law
> and this appeal.

(App. opp'n br. at 5)  Langdon concludes:

> This Appeal Board (ASBCA) does have the jurisdiction to
> accomplish such by denial of the NAVY motion for summary
> judgement.  This then allowing LANGDON to proceed to the
> LANGDON requested hearing with the presenting of existing
> and additional discovery materials which in the end will both
> settle this appeal and require the NAVY to issue future
> contracts for Bow Thruster repair/refurbishment incorporating

6

engineered and manufacturable approved MODs to be incorporated and thus eliminating; Life Safety, waste, fraud and financial resources of the Navy for such mission critical Bow Thrusters. I have stated and legally justified multiple doctrines,' principals and facts to support such an action by the ASBCA.

(App. opp'n br. at 5)

As evidenced by the above arguments, Langdon totally fails to understand what is and is not relevant to its appeal. None of the vague arguments cited above are relevant or material to the termination. However, since this is a Motion for Summary Judgment, at this point all Langdon must do is establish a single disputed material fact, which as we discuss below it has done. Fortunately for Langdon, however, notwithstanding its many false starts, it has (barely) succeeded in raising one such material fact.

*OEM Drawings*

The Navy required that Langdon refurbish the Bow Thrusters in strict compliance with the drawings listed in the contract (SOF ¶ 4). The Navy included the drawings in the R4 file:

4.1 Drawing. 5749810 Rev. R LCAC Mechanical Installation Bow Thruster identified as "Textron Marine Systems" (supp. R4, tab 17).

4.2 Drawing. 5749544 Rev. V LCAC Bow Thruster is identified as "Bell Aerospace Textron" (supp. R4, tab 18).

4.3 Drawing. 5749793 Rev. N LCAC Bearing Bow Thruster "Textron Marine Systems" (supp. R4, tab 19).

4.4 Drawing. 7616123 Rev. B SLEP Mod Bow Thruster "Textron Marine & Land Systems" (supp. R4, tab 20).

4.5 Drawing. 6800343 Rev. N LCAC Painting and Marking "Textron Marine Systems" (supp. R4, tab 21).

4.6 Drawing. 5749811 Rev. L LCAC Bracket Support Bow Thruster Installation. "Developed from Bell Aerospace Drawing" (supp. R4, tab 22).

When we looked at these drawings they were all originated by Textron or Bell Aerospace which we find are the OEMs. The contract required Langdon to refurbish the bow thrusters in strict accordance with these drawings. (SOF ¶¶ 2-4) The final decision included in part, "[s]ince the OEM built the original Bow Thrusters, the design drawings were OEM design drawings and were adequate design specifications to perform the taskings" (SOF ¶ 8).

*Disputed Material Facts*

The Navy perceives that Langdon's argument challenges the OEM drawings as inaccurate (gov't mot. at 7). That is not the case. Langdon expresses no problem with the OEM drawings, "[r]efurbishment of the fiberglass composite structure would have been possible if they [bow thrusters] had complied with the OEM specifications . . ." (app. opp'n br. at 17). It alleges that the bow thrusters it received were not manufactured or previously refurbished in accordance with the OEM's drawings (app. opp'n br. at 4). Therefore, Langdon could not refurbish in strict compliance with the OEM drawings listed in the contract as required. (SOF ¶ 4) Langdon could not have known this, if true, until after award when it received the eight Bow Thrusters. Therefore the Navy's argument that Langdon failed to complain about the OEM drawings before award is unpersuasive. (Gov't mot. at 7).

*Langdon's Supplemental Rule 4*

Mr. Swank, Langdon's owner, defending Langdon as a *pro se*, entered voluminous evidence[3] in the record but referred to little if any of it in its brief. We exercised our prerogative to examine Langdon's Rule 4 file to arrive at our decision.

While Langdon alleged that the bow thrusters received were not in compliance with the OEM drawings, it failed to refer us to evidence in the record supporting this argument. Mere allegations are generally not sufficient to create a disputed material fact. *New Iraq Ahd Co.*, 15-1 BCA ¶ 35,849 at 175,291-92 ("To ward off summary judgment, the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact."). However, Langdon entered into the record its drawings and more importantly photographs of the bow thrusters. Langdon included MOD #1 Drawings drafted by Langdon, the Navy original drawings, and Navy Rebuild/Refurbishment/Alternatives (RAA). (App. supp. R4, tabs 1-3) Langdon included 50 photographs of the bow thrusters showing what appears to be deteriorated fiberglass (1-28), progress on refurbishment (28-35)[4], and more fiberglass (35-50) (app. supp. R4, tab 4 at AE003758-3807). Without testimony explaining these drawings and

---

[3] Langdon entered 796 tabs into the record that it did not discuss and we did not review (app. supp. R4, tab 5).

[4] We were surprised by the apparent progress shown in the pictures.

photographs we can draw no conclusions about their meaning other than they seem to be relevant to Langdon's allegations and provide the minimal support necessary to support the allegations in Langdon's brief that there are "facts sufficient to show a dispute of material fact." It is close, but under the standards of summary judgment, Langdon receives the benefit of the doubt in this regard. Although the Navy's misperception of Langdon's argument does not affect our determination of whether there are material facts in dispute, it does mean that Langdon's argument is unrebutted. Thus, we have a disputed material fact, which is whether or not the bow thrusters provided by the Navy differed materially from the OEM drawings and therefore could not be refurbished as required by the contract.

CONCLUSION

Pursuant to the above, the Navy's motion is denied.

Dated: March 2, 2021

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61959, Appeal of Langdon Engineering & Mgt., rendered in conformance with the Board's Charter.

Dated: March 3, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals